# Illinois Official Reports

## Appellate Court

---

*John T. Doyle Trust v. Country Mutual Insurance Co.*,
2014 IL App (2d) 121238

---

| | |
|---|---|
| Appellate Court Caption | THE JOHN T. DOYLE TRUST, KEVIN C. DOYLE, MICHAEL W. DOYLE, and PAMELA DOYLE, Plaintiffs and Counterdefendants-Appellees and Cross-Appellants, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant and Counterplaintiff-Appellant and Cross-Appellee (Christian K. Narkiewicz-Lane, Defendant and Counterdefendant). |
| District & No. | Second District<br>Docket No. 2-12-1238 |
| Filed | March 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant, an insurance company that denied coverage to plaintiffs by refusing to defend or indemnify them in a wrongful eviction civil action, had a duty to defend plaintiffs according to the plain meaning of their policy, but the trial court did not abuse its discretion in denying imposition of sanctions, under section 155 of the Insurance Code, on defendant at summary judgment proceedings for erroneously denying coverage, since defendant reasonably believed that the policy did not cover the wrongful eviction. |
| Decision Under Review | Appeal from the Circuit Court of Jo Daviess County, No. 11-MR-27; the Hon. Val Gunnarsson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Keith G. Carlson, of Carlson Law Offices, of Chicago, for appellant.

Thomas F. Lucas and Kelly E. Parkey, both of McKenna Storer, of Chicago, for appellees.

Panel

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1 In 2004, plaintiffs, the John T. Doyle Trust, Kevin C. Doyle, Michael W. Doyle, and Pamela Doyle (collectively, the Doyles), leased space to defendant Christian K. Narkiewicz-Lane. During the lease term, the Doyles sold the leased premises and in the process, removed Christian's personal items. As a result, Christian filed a lawsuit against the Doyles in federal district court (the federal lawsuit). The Doyles requested that defendant Country Mutual Insurance Company defend and indemnify, pursuant to their insurance policy. Country Mutual denied having an obligation to defend or indemnify.

¶ 2 Thereafter, the Doyles brought a complaint in the circuit court of Jo Daviess County for a declaratory judgment against Country Mutual. The trial court granted the Doyles' motion for a judgment on the pleadings, finding that Country Mutual had a duty to defend the Doyles in the federal lawsuit. The trial court subsequently denied the Doyles' motion for summary judgment with respect to whether Country Mutual should be sanctioned pursuant to section 155 of the Illinois Insurance Code (the Insurance Code) (see 215 ILCS 5/155 (West 2010)). Pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), Country Mutual appeals the trial court's grant of the Doyles' motion for a judgment on the pleadings, contending that the trial court erred in determining that it had a duty to defend the Doyles in the federal lawsuit. The Doyles cross-appeal, contending that the trial court erred in denying their motion for sanctions against Country Mutual. We affirm.

¶ 3 I. Background

¶ 4 The record reflects that the John T. Doyle Trust owns a building located at 125 South Main Street in Galena (the premises). Kevin C. Doyle and Michael W. Doyle are cotrustees and beneficiaries of the trust. Pamela Doyle shares responsibility for managing the trust. Country Mutual is a company authorized to issue insurance policies in Illinois. Christian is an architect, painter, and sculptor who maintains residences in Galena, Chicago, and Greece.

¶ 5 In 2004, Christian leased the property from the Doyles to use as a rent storage and work space. The leased property was located on the second floor of a two-story brick building. In

2010, the Doyles sold the premises and, on July 20, 2010, removed Christian's personal items from the premises without his permission, placing those items either in a garbage dump or in storage. The items included artwork that Christian had created over his lifetime.

¶ 6 Thereafter, Christian filed the federal lawsuit, claiming a violation of the Visual Artists Rights Act of 1990 (17 U.S.C. § 106A (2006)), conversion, and a violation of the Illinois Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq.* (West 2010)). Among other allegations, Christian alleged that the Doyles knew that he had a valid lease to rent the property but evicted him in July 2010 without providing written notice or filing an eviction complaint pursuant to the Forcible Entry and Detainer Act. Christian alleged that the Doyles destroyed his personal items when evicting him and had failed to compensate him for the value of those items. After the federal lawsuit commenced, the Doyles notified Country Mutual of Christian's claims and requested that it defend and indemnify pursuant to their insurance policy. That policy provided in relevant part:

"Section II–Liability

   A. Coverages

      1. Business Liability

         a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury', 'property damage', or 'personal and advertising injury', to which this insurance does not apply. We may at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result."

With respect to coverage exclusions, the policy provided:

"Exclusions

   1. Applicable To Business Liability Coverage

      This insurance does not apply to:

         a. Expected or Intended Injury

           'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.

               * * *

         k. Damage To Property

           ***

           (2) Premises you sell, give away, or abandon, if the 'property damage' arises out of any part of those premises;

           ***

           (4) Personal property in the care, custody or control of the insured;

               * * *

         p. Personal and Advertising Injury

           'Personal and advertising injury':

           (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal advertising injury';

- 3 -

* * *

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.' "

The policy contained the following definitions:

"F. Liability and Medical Expenses Definitions

* * *

(14) 'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

* * *

c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

* * *

(17) Property damage means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

Country Mutual denied coverage and, as a result, the Doyles retained counsel in the federal lawsuit, incurring attorney fees and costs.

¶ 7     On August 26, 2011, the Doyles brought the current matter in state court. Count I of their complaint alleged that Country Mutual breached its duty to defend or indemnify pursuant to the insurance policy. The Doyles sought a declaratory judgment that Country Mutual had a duty to defend or indemnify the Doyles in the federal lawsuit and must reimburse them for the attorney fees and costs they incurred and pay any judgment or settlement resulting from that lawsuit. Count II alleged that Country Mutual was estopped from raising coverage defenses. Count III alleged that Country Mutual "wrongfully, unreasonably, and vexatiously" refused to defend the Doyles in the federal lawsuit, warranting sanctions pursuant to section 155 of the Insurance Code.

¶ 8     On September 19, 2011, Country Mutual filed a counterclaim for declaratory judgment, requesting a finding that the Doyles did not qualify as insureds pursuant to the insurance policy. On October 27, 2011, the Doyles filed a motion for a judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2010)). On December 12, 2011, Country Mutual filed its response to the Doyles' motion for a judgment on the pleadings and also filed a motion for summary judgment. On June 4, 2012, following a hearing, the trial court entered an order granting the Doyles' motion for a judgment on the pleadings on their duty-to-defend count, finding that Country Mutual had a duty to defend the Doyles in the federal lawsuit. The trial court denied Country Mutual's motion for summary judgment.

¶ 9     On July 17, 2012, the Doyles filed a motion for summary judgment with respect to count III of their complaint. On October 2, 2012, the trial court entered an order denying the motion. The trial court granted the Doyles' motion to voluntarily dismiss count II of their complaint without prejudice and further found that there was "no just reason to delay enforcement or

appeal of this order and the order of June 4, 2012." See Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). Country Mutual filed its notice of appeal on November 2, 2012, and the Doyles filed a cross-appeal on November 6, 2012.

¶ 10                                    II. Discussion
¶ 11                          A. Country Mutual's Duty to Defend

¶ 12    The first issue on appeal is whether the trial court erred in granting the Doyles' motion for a judgment on the pleadings and concluding that Country Mutual had a duty to defend the Doyles in the federal lawsuit. Country Mutual argues that the federal lawsuit did not contain any allegations of bodily injury, property damage, personal injury, or advertising damage. Country Mutual further argues that, even if the policy covered property damage resulting from a wrongful eviction, the policy's exclusions apply. Countering, the Doyles argue that Country Mutual had a duty to defend them in the federal lawsuit pursuant to the policy's plain language. The Doyles emphasize that the policy provided liability coverage for "personal and advertising injury," which the policy defined in part as "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." The Doyles maintain that the policy phrase "wrongful eviction" covered the allegations Christian made against them in the federal lawsuit.

¶ 13    Section 2-615(e) of the Code provides that "[a]ny party may seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e) (West 2010). A motion for judgment on the pleadings requires the trial court to examine the pleadings so as to determine whether there is an issue of fact or, conversely, whether the controversy can be resolved as a matter of law. *Crestview Builders, Inc. v. Noggle Family Ltd. Partnership*, 352 Ill. App. 3d 1182, 1184-85 (2004). In ruling on such a motion, the trial court may consider only facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions. *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001). The trial court must construe the evidence strictly against the moving party and liberally in favor of the nonmoving party. *McCall v. Devine*, 334 Ill. App. 3d 192, 198 (2002). Our review of a decision to grant a motion on the pleadings is *de novo*. *Id.*

¶ 14    "In construing an insurance policy, we must ascertain and give effect to the intentions of the parties, as expressed in the policy language." *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 184 (2010). A court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶ 31. Unambiguous words are given their plain, ordinary, and popular meanings; and we will narrowly read a policy provision purporting to exclude or limit coverage, applying such a provision only where its terms are clear, definite, and specific. *Burcham v. West Bend Mutual Insurance Co.*, 2011 IL App (2d) 101035, ¶ 11. An ambiguous policy provision will be construed liberally in favor of coverage. *Id.* (citing *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010)).

¶ 15    In this case, Country Mutual had a duty to defend the Doyles in the federal lawsuit pursuant to the policy's "personal and advertising injury" coverage provision. Christian's complaint in the federal lawsuit alleged that the Doyles violated the Illinois Forcible Entry and Detainer Act by evicting Christian and disposing of his personal items. Christian further alleged that the Doyles did not compensate him for the value of those items. Section F.14(c) of the policy

specified personal and advertising injury as including "*wrongful eviction* from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." (Emphasis added.) As the United States Court of Appeals for the Seventh Circuit has noted, the "plain and ordinary" meaning of "eviction" is "actions taken by landlords with the intent to deprive tenants of their right to occupy or enjoy leased premises." *Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037, 1040 (7th Cir. 1992) (citing *Zion Industries, Inc. v. Loy*, 46 Ill. App. 3d 902 (1977)); see also Black's Law Dictionary 594 (8th ed. 2004) (defining "eviction" as "[t]he act or process of legally dispossessing a person of land or rental property"). Thus, the essence of an eviction is a landlord taking actions with the intent of dispossessing a tenant of rental property and, therefore, is not limited to physical injury to a person. As a result, although the policy listed wrongful eviction under the "personal and advertising injury" provision, because the plain and ordinary meaning of "eviction" is to deprive a tenant of the right to enjoy leased premises, we conclude that the policy provision included coverage for property damage resulting from dispossessing Christian of rental property.

¶ 16    Country Mutual's reliance on *Allstate Insurance Co. v. Amato*, 372 Ill. App. 3d 139 (2007), is unavailing. In that case, the plaintiff provided an umbrella insurance policy to the defendant. *Id.* at 140. The policy defined "personal injury" as including:

> "(a) false arrest; imprisonment; wrongful detention;
>
> (b) wrongful entry; invasion of rights of occupancy;
>
> (c) libel, slander, humiliation, defamation of character; invasion of rights of privacy." *Id.* at 141.

The trial court granted summary judgment in the plaintiff's favor, concluding that the plaintiff did not have a duty to defend the defendant, because the underlying complaint alleged wrongful detention of property but the policy covered only wrongful detention of a person. *Id.* at 142.

¶ 17    The reviewing court affirmed, concluding that "wrongful detention" as it was defined in the policy unambiguously referred to wrongfully detaining a person, not wrongfully detaining property. *Id.* at 144. The reviewing court reasoned that, by placing "wrongful detention" in the same category as "false arrest" and "imprisonment," two terms that were directly related to the restraint of a person, it "[was] clear" that the language was intended to mean wrongful restraint of a person, not property. *Id.* The reviewing court further concluded that, because the policy specifically covered "property damage" elsewhere, it would be "more logical" for wrongful detention to have been mentioned under the "property damage" section if the parties intended it to apply to property damage. *Id.*

¶ 18    While we are cognizant of the reasoning in *Amato*, we do not find it persuasive. There, the policy provision in question involved "wrongful detention," which could independently happen to either a person or property. Here, the policy provision provided coverage for a wrongful eviction, which as noted above is commonly defined as depriving a tenant of the right to enjoy leased premises. See *Pipefitters Welfare Educational Fund*, 976 F.2d at 1040. Removing Christian's personal items certainly was one method to deprive him of his right to enjoy the leased premises. If the parties intended to limit the commonly understood definition of "eviction" to include only wrongfully evicting a person and not property, they could have added express language in the policy to reflect that intent. See *Lee v. Allstate Life Insurance*

*Co.*, 361 Ill. App. 3d 970, 979 (2005) (noting that a presumption exists against provisions that could have easily been included in a contract but were not). The parties did not do so. We refuse to restrict the definition of "eviction" to include only physical harm to a person merely because the policy listed that phrase under "personal and advertising injury" as opposed to under "property damage." In any event, to the extent that an ambiguity was created by listing "wrongful eviction" under "personal and advertising injury," and not under "property damage," we must construe that ambiguity liberally in favor of the Doyles. See *Burcham*, 2011 IL App (2d) 101035, ¶ 11.

¶ 19 Finally, we reject Country Mutual's argument that two of the policy's exclusions apply. Country Mutual first argues that, because Christian's allegations in the federal lawsuit involved the Doyles violating the lease terms by wrongfully evicting him, the policy's breach-of-contract exclusion applies. We recognize that leases are contracts. See *Williams v. Nagel*, 162 Ill. 2d 542, 555 (1994) ("A lease is a contract between landlord and tenant."). We are further cognizant that situations could arise where a wrongful eviction does not involve a lease. Nonetheless, we find the policy's breach-of-contract exclusion too vague to be enforceable here. When determining whether the policy's coverage was "clear, specific, and definite," the question is whether the average person, for whom the policy was written, would reasonably understand that coverage for a wrongful eviction would be limited to a wrongful eviction where no lease agreement is involved. See *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 395 (2005) ("[T]he issue is whether the average person, for whom the policy is written, would reasonably understand that [the insurer's] liability for uninsured-motorist coverage would be limited for payments made pursuant to section 22-306 of the Pension Code and implementing municipal ordinance."). The answer is no. As noted above, the plain and ordinary meaning of "eviction" is "actions taken by landlords with the intent to deprive tenants of their right to occupy or enjoy *leased* premises." (Emphasis added.) *Pipefitters Welfare Educational Fund*, 976 F.2d at 1040. We do not believe that generically excluding coverage for a breach of contract would convey to the average, normal, and reasonable person that a wrongful eviction involving a lease agreement would be excluded from coverage. See *Gillen*, 215 Ill. 2d at 395.

¶ 20 Further, even if we were to conclude that the exclusion was sufficiently clear, specific, and definite, Country Mutual's interpretation results in an ambiguity. In other words, construing the breach-of-contract exclusion to apply to wrongful evictions involving leases would compete with the equally reasonable construction that all wrongful evictions, regardless of whether a lease agreement is involved, would be covered. " 'Where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow. *** Rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy.' " *Id.* at 396 (quoting *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 141 (1999)).

¶ 21 For similar reasons, we reject Country Mutual's second argument, invoking the policy's exclusion of coverage for bodily injury or property damage expected or intended from the standpoint of the insured. If we were to hold that the policy did not cover wrongful evictions–despite the policy expressly listing "wrongful eviction"–because the resulting harm was "expected or intended from the standpoint of the insured," two reasonable and competing interpretations of the policy would exist. Again, if the policy contains competing interpretations, and both interpretations are reasonable, we must construe the policy in favor of the insured. See *id.*

- 7 -

¶ 22    In sum, by listing "wrongful eviction" under the policy's "personal and advertising injury" provision, the parties did not intend to limit the plain and ordinary meaning of "eviction" to cover only physical harm to a person. Accordingly, because Christian alleged in the federal lawsuit that his personal items were damaged as a result of the Doyles' wrongfully evicting him, Country Mutual had a duty to defend the Doyles in that proceeding.

¶ 23                                    B. The Doyles' Cross-Appeal

¶ 24    In their cross-appeal, the Doyles contend that the trial court erred in denying their motion for summary judgment on their claim alleging that Country Mutual should be sanctioned pursuant to section 155 of the Insurance Code.

¶ 25    Before reaching the merits, we briefly address whether we have jurisdiction over the Doyles's cross-appeal. See *Department of Healthcare & Family Services v. Cortez*, 2012 IL App (2d) 120502, ¶ 7 (noting that a reviewing court has a duty to consider *sua sponte* whether it has jurisdiction and must dismiss an appeal if jurisdiction is lacking). Generally, the denial of a motion for summary judgment is not appealable, because such an order is interlocutory. *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 119. However, in *Clark*, our supreme court held that because the trial court's order disposed of all issues in the case, and pursuant to principles of judicial economy, it could properly review a trial court's denial of a motion for summary judgment. *Id.* ¶¶ 119-20.

¶ 26    In this case, although the Doyles are appealing from the trial court's denial of their motion for summary judgment, the trial court's October 2, 2012, order disposed of all pending matters. Specifically, that order reflected that the trial court had previously granted the Doyles' a declaratory judgment that Country Mutual had a duty to defend. The order further provided that the Doyles voluntarily dismissed count II of their complaint and it denied the Doyles' motion for summary judgment with respect to sanctions pursuant to section 155 of the Insurance Code. Further, during the hearing the Doyles advised the trial court on the record that they would not "do discovery on [their claim for section 155 sanctions] or go forward" once the trial court denied their summary judgment motion. Thus, because the trial court's order disposed of all issues in this case, and pursuant to principles of judicial economy, we will review the Doyles' contention. See *id.*

¶ 27    Turning to the merits, "[t]he purpose of summary judgment is to determine whether a genuine issue of material fact exists, not to try a question of fact." *Thompson v. Gordon*, 241 Ill. 2d 428, 438 (2011). Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits, and other relevant matters on file show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Chubb Insurance Co. v. DeChambre*, 349 Ill. App. 3d 56, 59 (2004) (citing *Prowell v. Loretto Hospital*, 339 Ill. App. 3d 817, 822 (2003)). In determining whether a genuine issue of material fact exists, we must construe the documents on file strictly against the movant and liberally in favor of the nonmoving party. *Id.*

¶ 28    Section 155 of the Insurance Code allows for an award of attorney fees and costs for an insurer's "unreasonable and vexatious" refusal to comply with its policy obligations. (Internal quotation marks omitted.) *Auto-Owners Insurance Co. v. Yocum*, 2013 IL App (2d) 111267, ¶ 28. However, an insurer will not be liable for fees and costs merely because it litigated and lost the issue of insurance coverage; that is, if a *bona fide* dispute existed regarding insurance coverage, the insurer's delay in settling a claim does not violate section 155. *American States*

*Insurance Co. v. CFM Construction Co.*, 398 Ill. App. 3d 994, 1003 (2010). "A trial court must consider the totality of the circumstances, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of her or his property." *Id.*

¶ 29    The parties dispute the applicable standard of review. Citing *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75 (2002), the Doyles argue that a reviewing court should apply the abuse-of-discretion standard of review to a trial court's ruling on section 155 sanctions following a trial during which testimony and documentary evidence was considered, but that, when a trial court denies section 155 sanctions at summary judgment, the *de novo* standard of review applies. Country Mutual argues that we should review the trial court's ruling for an abuse of discretion, the standard of review commonly applied to a trial court's decision to grant or deny sanctions pursuant to section 155.

¶ 30    We decline to follow *West American Insurance Co.* More recent case law has addressed the appropriate standard of review for a trial court's ruling on section 155 sanctions at summary judgment. See *West Bend Mutual Insurance v. Norton*, 406 Ill. App. 3d 741, 744 (2010) (citing *Gaston v. Founders Insurance Co.*, 365 Ill. App. 3d 303, 325 (2006)); *CFM Construction*, 398 Ill. App. 3d at 1004 (applying the abuse-of-discretion standard of review when reviewing a denial of section 155 sanctions at summary judgment). Further, we note that the trial court drew on its knowledge of the proceedings in deciding that the facts presented did not warrant sanctions. See *West Bend*, 406 Ill. App. 3d at 744. Accordingly, pursuant to *West Bend*, *Gaston*, and *CFM Construction*, we will review the trial court's ruling for an abuse of discretion. "An abuse of discretion will be found where no reasonable person would take the view adopted by the trial court." *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

¶ 31    In this case, the trial court did not abuse its discretion in denying the Doyles' request for section 155 sanctions. As discussed above, whether Country Mutual had a duty to defend the Doyles in the federal lawsuit hinged on whether the term "wrongful eviction" encompassed harm to Christian's personal items. While we ultimately concluded that the plain and ordinary meaning of the term "eviction" includes harm to a tenant's personal property, Country Mutual reasonably believed that the policy did not cover such harm. While we did not find *Amato* persuasive, that case clearly provided Country Mutual with a *bona fide* reason to challenge coverage. See *CFM Construction*, 398 Ill. App. 3d at 1003 (defining "*bona fide*" as "real, actual, genuine, and not feigned" (internal quotation marks omitted)); see also *Yocum*, 2013 IL App (2d) 111267, ¶ 31 (holding that a trial court did not abuse its discretion in declining to impose section 155 sanctions, despite the insurance company erroneously denying coverage).

¶ 32                                III. Conclusion

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Jo Daviess County.

¶ 34    Affirmed.